IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BARBARA JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-12-377-D |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
|   Acting Commissioner of Social | ) | |
|   Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying her application for supplemental security income benefits

under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 1382.   Defendant has

answered the Complaint and filed the administrative record (hereinafter TR___), and the

parties have briefed the issues.   The matter has been referred to the undersigned Magistrate

Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).   For the following

reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

On June 30, 2009, Plaintiff protectively filed her application for benefits, alleging she

1

was not able to work due to osteoarthritis in her lower back and hip, depression, and anxiety.[1] (TR 152-157, 154, 170).  Plaintiff stated she had a ninth grade education, and she had no past relevant work experience.[2] (TR 45, 82, 175).

Plaintiff submitted medical records showing that she had been treated beginning in January 2007 at the Oklahoma Community Health Services Clinic where she saw Dr. Valerie Manning for treatment of various physical conditions and Dr. Dwayne Roush for mental health treatment.  Dr. Roush diagnosed Plaintiff with a mood disorder not otherwise specified ("NOS") in January 2009 and prescribed mood-stabilizing and sleeping-aid medications for her. (TR 329).  Plaintiff reported in April 2009 to Dr. Roush that the medications were working and she was "doing better." (TR 322).  In June 2009, Plaintiff reported to Dr. Roush that she was sleeping well, interacting appropriately with others, and had "well organized thoughts." (TR 321).

In a consultative physical examination of Plaintiff conducted in October 2008, Dr. Brennan noted that she exhibited normal range of motion, normal hand skills, normal posture, normal heel and toe walking, no neurological deficits, and normal gait.  The diagnostic impression was osteoarthritis in her left hip by history and depression with anxiety disorder by history. (TR 240-242).

In a consultative psychiatric evaluation conducted by Dr. Chakraburtty in November

---

[1]Plaintiff filed a previous application for disability benefits that was denied on February 10, 2009. (TR 166).

[2]Plaintiff last worked in 1993 as a housekeeper. (TR 170).

2008, the psychiatrist noted that Plaintiff exhibited a "somatic fixation" on hip and knee pain, "dependent and avoidant" personality traits, "intact" concentration and memory, and a "jovial, wide ranged, and clearly mood congruent" affect. (TR 274). Dr. Chakraburtty noted a diagnostic impression of mood disorder due to general medical condition, alcohol abuse and/or dependent in remission, and a secondary impairment of personality disorder NOS. He noted Plaintiff's mood disorder was "reasonably treatable" and that Plaintiff would benefit from vocational rehabilitation therapy. (TR 275).

Plaintiff sought treatment at a hospital emergency room in June 2009 for sharp back pain occurring for one week. (TR 305). A lumbar spine x-ray showed degenerative disease, and Plaintiff was prescribed a short-term dose of pain and muscle relaxant medications for myofascial strain and arthritis. (TR 305-313).

Dr. Rodgers conducted a consultative psychological evaluation of Plaintiff in September 2009. Dr. Rodgers noted that a mental status examination was unremarkable and that Plaintiff exhibited an average intellectual functioning level. (TR 336, 337). Dr. Rodgers noted a diagnostic impression of moderate depressive disorder and panic disorder. (TR 337). Dr. Rodgers opined that despite these impairments Plaintiff would be able to understand, remember and perform simple and complex tasks although her ability to adapt to changes in a work environment "may be impaired" by anxiety and irritability. (TR 337).

Plaintiff underwent a consultative physical examination in September 2009 conducted by Dr. Rindler. The physician noted that Plaintiff complained of left hip arthritis with pain and pain in her knees, ankles, shoulders, and elbows. (TR 330). Plaintiff reported that her

pain worsened with walking and standing and decreased with lying down and taking pain medication. (TR 330). She also reported a history of depression that was improved with anti-depressant medication. (TR 330). Dr. Rindler noted that in a physical examination Plaintiff exhibited decreased range of motion in her back, hip, and left knee due to pain, normal grip strength, normal gait, intact heel and toe walking, no abnormal motor behavior, and normal speech, thought processes, mood, and affect. (TR 331). The diagnostic assessment was osteoarthritis and depression. (TR 331).

In October 2009, Plaintiff sought treatment at a hospital emergency room for back pain. The examining physician noted Plaintiff exhibited no motor deficit, normal range of motion in her extremities, no sensory deficit, and normal mood/affect. (TR 366). She was prescribed a short-term dose of pain medication and discharged. (TR 365-366).

In December 2009, Plaintiff sought treatment at a hospital emergency room for a migraine headache lasting eight days. (TR 369). Plaintiff later stated the headache had lasted three weeks. (TR 373). An examining physician noted that a physical examination of Plaintiff was completely normal, including normal gait and normal motor strength findings. (TR 379). CT scan and MRI testing of Plaintiff's brain showed no significant pathology. (TR 376). Plaintiff reported to a consulting neurologist that she had experienced migraine headaches for at least eleven years. (TR 381). Plaintiff's headache improved, and she was discharged in stable condition. (TR 376). Plaintiff was treated at a hospital emergency room in December 2009 for gout in her right wrist. (TR 384-385).

Dr. Roush noted that he saw Plaintiff on December 29, 2009, that she was "doing

well" on her medications, and that her mood was "pleasant and appropriate" during her office visit. (TR 415). Her medications for generalized anxiety disorder and mood disorder NOS were continued. (TR 415).

In February 2010, Plaintiff sought treatment at a hospital emergency room for right hip and right knee pain for several days. (TR 500). She exhibited decreased range of motion in her right hip due to pain but no other deficits. (TR 501). Plaintiff was prescribed a short-term dose of pain medication for right hip pain probably due to arthritis. (TR 501-502).

Plaintiff sought treatment at a hospital emergency room in October 2010 for neck pain beginning the previous day causing muscle spasms. (TR 507). She exhibited some tenderness in the paraspinous muscles but good range of motion and no other deficits. Plaintiff was prescribed pain medication and muscle relaxant medication for cervical degenerative disc disease and acute cervical strain. (TR 508).

Plaintiff sought mental health treatment at Hope Community Services in October 2010. Plaintiff reported she lived with her mother and requested medications for anxiety and depression causing difficulties with memory, concentration, anger, sleep, frequent mood changes, lack of interest/motivation, irritability, sadness, and panic attacks occurring two to three days a week. (TR 476). Mood-stabilizing, anti-depressant, and sleeping-aid medications were prescribed. (TR 471).

Plaintiff's application was administratively denied on initial and reconsideration reviews. (TR 94, 95). At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Thompson on November 3, 2010. (TR 32-94). At this hearing,

Plaintiff appeared with counsel and testified, and a vocational expert ("VE") testified. Plaintiff testified that she lived with her 84-year-old mother and that she drove herself to the grocery store and to her doctors' appointments. Plaintiff testified that she experienced panic attacks occurring approximately three times per week which improved with lying down for two to three hours. Plaintiff also stated that she had depression, a sleep disorder for which she took sleeping-aid medication, frequent headaches for which she did not take medication, arthritis in her left hip, hands, and left foot, gout in her left foot, degenerative disease in her cervical and lumbar spines, temporomandibular joint dysfunction, dizziness occurring sometimes two to three times per day for which she took medication, bipolar disorder, and anxiety disorder.

Plaintiff testified that pain "moderate[ly]" affected her memory and concentration causing her to "have to write everything down," and that she had a 25 percent reduction in her ability to complete tasks. Plaintiff testified that doctors had not placed any restrictions on her ability to work and that she could read and write in English. Plaintiff's case manager at Hope Community Services testified that he had seen Plaintiff three times since she began to see him on October 1, 2010. The case manager testified that Plaintiff was able to carry out simple instructions, that she could make simple, work-related decisions, that she was not limited in her ability to ask simple questions or request assistance, and that she was able to be aware of normal hazards and take appropriate precautions. Otherwise, the case manager testified that due to her "anger management problems" and general inability to provide for herself Plaintiff was markedly limited in most other work-related functional abilities,

including her ability to maintain attention and concentration for extended periods, her ability to sustain an ordinary routine without special supervision, her ability to work in coordination with or in proximity to others without being distracted by them, her ability to complete a normal workday and work week without interruptions from psychologically-based symptoms, her ability to interact appropriately with the general public, her ability to accept instructions and respond appropriately to criticism from supervisors, and her ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes.

The ALJ elicited vocational testimony concerning the availability of work for an individual of Plaintiff's age, education, lack of work experience. The ALJ's hypothetical inquiry also included the residual functional capacity ("RFC") for light work with no more than occasional stooping, no more than frequent climbing, balancing, kneeling, crouching, or crawling, the ability to perform simple and some complex tasks, the ability to relate to others on a superficial work basis, and the ability to perform only unskilled, entry-level work. In response to this hypothetical question, the VE testified that such an individual could perform light, unskilled jobs, including the jobs of electronics assembler, laundry worker, and packaging machine operator. The VE provided the numerical, exertional, and skill designations given these positions by the United States Department of Labor in the agency's Dictionary of Occupational Titles ("DOT"). The VE testified that this testimony did not differ from the information available in the DOT or its companion volume, the Selected Characteristics of Occupations.

The ALJ issued a decision on December 22, 2010, in which the ALJ made relevant

findings that

- Plaintiff's previous application would not be reopened,

- Plaintiff had no past relevant work,

- she was 50 years old at the time of the decision which placed her in the category of "closely approaching advanced age,"

- she had a limited education and was able to communicate in English,

- she had severe impairments due to osteoarthritis, degenerative joint disease, degenerative disc disease, headaches, an affective disorder, an anxiety disorder, and a personality disorder,

- she was capable of performing light work limited to occasional stooping and no more than frequent climbing, balancing, kneeling, crouching, and crawling, with the abilities to perform simple and some complex tasks, to relate to others on a superficial basis, and to adapt to a work situation,

- in light of this residual functional capacity ("RFC") for work, Plaintiff's age, education, and work experience, and the VE's testimony at the administrative hearing, Plaintiff had the ability to perform work that was available in the national economy, including the jobs of electronics assembler (DOT 726.682-014),  laundry worker (DOT 589.685-038), and packing machine operator (DOT 920.685-026), and

- Plaintiff was therefore not disabled within the meaning of the Social Security Act. (TR 11-25).  The Appeals Council declined to review the ALJ's decision. (TR 1-3).

II. <u>Standard of Review</u>

Plaintiff now seeks judicial review of the final decision of the Defendant Commissioner embodied in the ALJ's determination. Judicial review of a decision by the Commissioner is limited to a determination of whether the Commissioner's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1140 (10th Cir. 2010); <u>Doyal v. Barnhart</u>, 331 F.3d 758, 760 (10th Cir. 2003). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." <u>Wall v. Astrue</u>, 561 F.3d 1048, 1052 (10th Cir. 2009)(citations, internal quotation marks, and brackets omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i). The Commissioner follows a five-step sequential evaluation procedure to determine whether a claimant is disabled. <u>Doyal</u>, 331 F.3d at 760. In the first four steps of this process, the claimant has the burden of establishing a prima facie case of disability. <u>Id.</u> In this case, Plaintiff's claim was denied at step five. At the fifth and final step of the requisite sequential evaluation process, the burden shifts to the Commissioner "to show that the claimant retains sufficient [residual functional capacity] . . . to perform work in the national economy, given her age, education

9

and work experience." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)(internal quotation and citation omitted).

III. Step-Five Determination

The VE testified that an individual with Plaintiff's vocational characteristics and the RFC limitations found by the ALJ could perform several light, unskilled jobs, including the positions of electronics assembler, laundry worker, and packing machine operator. The Plaintiff contends that the VE's testimony contained errors that warrant vacating the Commissioner's decision. The Commissioner responds that any error committed by the VE is harmless and that the Commissioner's decision is supported by substantial evidence in the record.

Plaintiff is correct that during the administrative hearing the VE misidentified the "electronics assembler" position. The numerical designation identified by the VE for this position, DOT 726.682-014, actually describes a "wire-wrapping machine operator" in the electronic components and accessories industry. The DOT describes this position as involving light work that is unskilled.[3] Even though the position was misidentified by the VE during the hearing, the error was harmless. Because the VE identified a position that falls within the RFC determined by the ALJ, the ALJ did not err in relying on this position to satisfy the Commissioner's step five burden.

---

[3]The DOT describes this job as requiring a specific vocational preparation ("SVP") level of 2. Jobs with an SVP of 1 or 2 are classified as unskilled work. Social Security Ruling 00-4p, 2000 WL 1898704, at *3. Unskilled work is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a).

Plaintiff argues that the DOT identifies several "laundry worker" positions, none of which bear the numerical designation described by the VE and all of which are "outside the work level capacity of sedentary established at Step 5 by the ALJ for Ms. Jackson." Plaintiff's Opening Brief, at 9. First, Plaintiff is mistaken in arguing that the ALJ determined Plaintiff had the RFC to perform only sedentary work. The ALJ's RFC finding includes the ability to perform work at the "light" exertional level. (TR 18). Plaintiff is again correct, however, that the VE misidentified the "laundry worker" position. The numerical designation identified by the VE for this position, DOT 589.685-038, actually describes a "dry cleaner" who cleans and dries knitted garments. This position is described in the DOT as involving light, unskilled work.

Even though the position was misidentified by the VE during the hearing, the error was harmless. Because the VE identified a position that falls within the RFC determined by the ALJ, the ALJ did not err in relying on this position to satisfy the Commissioner's step five burden.

Plaintiff is again correct that the VE misidentified the "packing machine operator" position. The numerical designation identified by the VE for a "packing machine operator" position, DOT 920.685-026, actually describes a "bottle packer." This position is described in the DOT as involving light, unskilled work. Even though the position was misidentified by the VE during the hearing, this error was harmless. Because the VE identified a position that falls within the RFC determined by the ALJ, the ALJ did not err in relying on this position to satisfy the Commissioner's step five burden.

As the ALJ recognized, no work-related restrictions had been imposed upon Plaintiff by a treating doctor.  All of the consultative examining and reviewing physical and mental health professionals found that Plaintiff could perform work with some restrictions.  The ALJ gave greater weight to the opinions of Dr. Rodgers and Dr. Kendall and adopted the RFC assessments made by these doctors. (TR 22).  Plaintiff has not pointed to any conflicting evidence in the record.[4]

Plaintiff asserts only that the ALJ should have given more consideration to the "impact effect" of her ninth grade education. Plaintiff's Opening Brief, at 11.  The ALJ, however, found that Plaintiff had a limited education.  The regulations describe a "limited education" as "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. [The agency] generally consider[s] that a 7th grade through the 11th grade level of formal education is a limited education." 20 C.F.R. §416.964(b)(3).  Other than a reference to Plaintiff's vague testimony that she was "not good at numbers," (TR 62), Plaintiff has not pointed to specific evidence in the record that would conflict with the ALJ's findings that Plaintiff had a limited education which, at least as a partial result of this limitation, restricted her to the performance of unskilled work.  The

---

[4]The ALJ reasoned that the testimonial opinion of Mr. Hepburn, Plaintiff's case worker at Hope Community Services, who found Plaintiff was effectively disabled, was not entitled to controlling or significant weight as Mr. Hepburn was not an acceptable medical source under the agency's regulations and also because Mr. Hepburn's opinion was not consistent with the opinions and observations of the treating, examining, and reviewing physicians in the record. (TR 22). This determination is well supported by the record.

ALJ's findings are well supported by the evidence. Under these circumstances, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____ March 26th, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this _____ 6th _____ day of _____ March, 2013.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE